Lawrence v. Wheeler.

H. V. LAWRENCE V. A. C. WHEELER.

No. 15,683.   (93 Pac. 602.)

SYLLABUS BY THE COURT.

ELECTIONS — *County Office — Pleading Cause of Contest — De-murrer.*  A general charge in the statement of the contestor of a county election of error and mistake by the boards of judges in designated precincts in counting the ballots and by the board of canvassers in declaring the result is sufficient as against an attack by demurrer, and is not void for indefiniteness.

Error from Finney district court; CHARLES E. LOB-DELL, judge *pro tem.*   Opinion filed January 11, 1908. Reversed.

*A. M. Harvey,* and *Albert Hoskinson,* for plaintiff in error.

*W. R. Hopkins,* and *Richard J. Hopkins,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: H. V. Lawrence instituted a contest for the office of county treasurer of Finney county against A. C. Wheeler.  His statement was sufficient unless it be with reference to the causes of contest.  In that respect it reads as follows:

"Said contestor further states that the said A. C. Wheeler, contestee, was not legally and lawfully elected or chosen by a majority of the lawful votes cast at said election to be the county treasurer of Finney county, Kansas, for the following reasons, to wit:

"For errors and mistakes of the boards of judges of election at said election, so held in the various voting precincts, to wit, first, second and third wards in the city of Garden City, Sherlock, Macks, Huffmans, Plymell, Pierceville, Pleasant Valley, Knauston, Eminence and Ravanna, in counting the votes so cast at said election for the said office of county treasurer of Finney county, Kansas.

14—77 KAN.

"For errors and mistakes of the board of county commissioners of Finney county, Kansas, acting as a board of canvassers of the votes cast at said election, in declaring the result of said election in favor of the said A. C. Wheeler, contestee, for the said office of county treasurer of Finney county, Kansas, at said election so held on the 6th day of November, 1906.

"That the boards of election judges in Pierceville and Macks precincts failed and neglected to account for or return to the county clerk of Finney county, Kansas, the number of ballots received by them from the said county clerk aforesaid prior to election.

"That the board of election judges in each of the aforesaid precincts failed to account for or return to the county clerk of Finney county, Kansas, the number of 'blank' ballots sealed up in an envelope, as required by law, or the 'void' ballots or the ballots 'objected to,' as required by law, enclosed in an envelope securely sealed and so marked and indorsed as clearly to disclose its contents; that in said precincts Pierceville and Macks all ballots not used, and all ballots spoiled by the voters while attempting to vote, were not returned by the boards of judges of election in said two above-named precincts to the county clerk of Finney county, Kansas, as required by law, the officer from whom all ballots were received.

"That the boards of election judges in said county, in the following precincts, to wit, first, second and third wards in the city of Garden City, Sherlock, Macks, Huffmans, Plymell, Pierceville, Pleasant Valley, Knauston, Eminence and Ravanna, failed to count for the contestor votes or ballots which were legally cast for him, and which were marked by said boards 'blank,' 'void,' and 'objected to,' and 'rejected.'

"That on account of the above-mentioned errors, mistakes and irregularities a correct count of said votes cast in Finney county, Kansas, on said 6th day of November, 1906, and a correct canvass of said votes, would affect the result of said election of county treasurer of Finney county, Kansas, and that a correct count of the votes cast at the said several voting precincts so cast would affect the result of said election for the office of county treasurer, and that a correct count of the votes cast at said election on November 6, 1906, in Finney county, Kansas, and a correct canvass of the votes so cast at said election, would result in the elec-

tion of said H. V. Lawrence, contestor, to the office of county treasurer of Finney county, Kansas, at said election so held on the 6th day of November, 1906."

· The contestee demurred to the statement, but the demurrer was overruled. The contestee then filed an answer, to which the contestor replied, and the contest court proceeded to count the ballots. Various ballots were not counted for the contestor which he claimed should have been counted for him, and various ballots were counted for the contestee to which the contestor objected. The ballots from two election precincts were not opened or counted. The contest court decided in favor of the contestee, and the contestor prosecuted proceedings in error in the district court. The district court declined to consider the principal errors alleged, on the ground the statement did not specify with sufficient particularity the causes of contest, thereby virtually sustaining the demurrer which the contest court had overruled. The contestor prosecutes error in this court.

The district court adopted the rigorous rule approved by some courts and favored by some text-writers which requires that the facts constituting the cause of contest must be pleaded in detail, with particularity and precision, or the statement will not authorize the contest court to proceed or support a judgment in the contestor's favor. This rule rests in part upon the public policy which forbids speculative and groundless contests, and is supported by the argument that if the contestor know of causes of contest he can recite the facts, while if he do not know it is better that he should not be allowed to interfere.

The question is one of statutory interpretation, the legislature having indicated what the public policy of this state demands by the procedure which it has prescribed. The remedy, so far as it relates to elections to county offices, is quite summary in character, and is designed to secure a speedy determination of the con-

test. The tribunal having jurisdiction to try the contest is an inferior one having special and limited powers, and need not be composed of persons who are learned in the law or familiar with the arbitrary rules of pleadings in civil actions. The proceeding is not one for the benefit of candidates alone. It may be instituted by any elector of the county, the purpose being that the people's choice, legally registered, may be made to prevail upon the complaint of any one of them. The contestor's statement is "a written statement of his intention to contest the election," and must set forth "the particular causes of contest." (Gen. Stat. 1901, § 2659.) The statute names causes for contest as follow:

"First, for malconduct, fraud or corruption on the part of the judges of election in any township, or of any of the boards of canvassers, or on the part of any member of either of those boards.

"Second, when the contestee was not eligible to the office at the time of the election.

"Third, when the contestee has been convicted of an infamous crime before the election, and the judgment has not been reversed, annulled, or set aside, nor the contestee pardoned, at the time of the election.

"Fourth, when the contestee has given or offered any elector or any judge, clerk or canvasser of the election any bribe or reward, in money, property or thing of value, for the purpose of procuring his election.

"Fifth, when illegal votes have been received, or legal votes rejected, at the polls, sufficient to change the result.

"Sixth, for any error or mistake in any of the boards of judges or canvassers in counting or declaring the result of the election, if the error or mistake would affect the result.

"Seventh, for any other cause (though not enumerated above) which shows that another was the legally elected person." (Gen. Stat. 1901, § 2655.)

In framing the law the legislature considered specially the subject of certainty in stating causes of con-

test, but went no further than to make the following requirement:

"When the reception of illegal or the rejection of legal votes is alleged as a cause of contest, the names of the persons who so voted, or whose votes were rejected, with the township where they voted or offered to vote, shall be set forth in the statement." (Gen. Stat. 1901, § 2660.)

There is no provision for the forming of definite issues such as the code of civil procedure contemplates.

This court has held that pleadings in the nature of an answer and reply are proper in contest cases, and if filed they should be construed according to the ordinary rules applicable to such pleadings. (*Baker v. Long,* 17 Kan. 341.) It has also been decided that the contest should be heard and adjudicated upon the merits and not disposed of upon technicalities. (*Buckland v. Goit,* 23 Kan. 327.)

The case last cited is instructive. The statute provides that the contestee shall be informed of the contest by a notice served upon him, which shall contain a brief statement of the causes of contest. (Gen. Stat. 1901, § 2662.) The notice did not contain this statement. The contestee appeared specially and moved to dismiss. The proceeding was dismissed, and the district court sustained the ruling of the contest court. This court held the notice to be irregular only, and said:

"At the time that this contest was dismissed, it was too late for the contestor to commence a new contest, and hence, if this dismissal were to be sustained, it would be a final determination of the case, and a final determination upon a pure technicality. This the law never encourages, and especially not where cases are to be tried before inferior tribunals, not skilled in the law. It is a dangerous thing for an inferior tribunal, not skilled in the law, to attempt to decide cases upon pure legal technicalities. Superior courts seldom attempt any such thing. And the law always encourages trials upon the merits, and never encourages final determinations upon mere technicalities of any kind." (Page 330.)

From the foregoing it is plain the legislature did not ordain a severely technical and highly specialized system of procedure for the contest of county elections, but instead adopted a very simple and liberal one, designed to facilitate inquiry into causes which, if established, would vitiate the declared result, while at the same time affording due protection to the public, the party chiefly interested, and to claimants of offices.

The courts are fond of quoting the following fine paragraph relating to pleadings in election contests contained in the opinion in the case of *Mann v. Cassidy*, 1 Brewst. (Pa.) 11:

"The rule must not be held so strict as to afford protection to fraud, by which the will of the people is set at naught; nor so loose as to permit the acts of sworn officers, chosen by the people, to be inquired into without an adequate and well-defined cause." (Page 27.)

The illustrative and qualifying paragraph immediately preceding usually is not quoted. It reads as follows:

"It is obvious that if the court were to require the same precision and certainty in an election petition as in the pleadings between parties to a suit at law, the object of which pleadings is to produce a single issue, the difficulty of stating precisely the manner in which a fraud has been perpetrated, or an undue return made, would, to a great degree, nullify the law itself, which designs that such charges shall be investigated." (Page 26.)

Taken together, the two paragraphs express a fair interpretation of the meaning and spirit of the Kansas statute.

In this case the contest court and the contestee were fairly advised of the causes of contest. The causes specified were not fraud and corruption, the ineligibility of the contestee, the conviction of the contestee of an infamous crime, bribery, or the receiving of illegal votes. But errors and mistakes of the boards of judges in named precincts in counting the votes cast, errors

and mistakes of the board of canvassers in declaring the result, and failure of the boards of judges in various named precincts to count certain described classes of ballots were specified. It is true that the ultimate fact of error and mistake was alleged in general terms, but this circumstance did not render the statement a nullity. If what was said were true the contest was well founded and the contest court was bound to investigate the charges. Even under the code of civil procedure such an allegation will not render a pleading subject to demurrer. The adverse party may be entitled to a more definite and detailed statement of the facts, but his remedy is by motion and not by demurrer.

The following quotation from an early decision of this court, construing a pleading attacking a tax deed, is conclusive upon the question:

"We think, however, the court below erred in sustaining said demurrer. We shall take the fourth reason given, for the purpose of showing it, because said reason is the shortest, and because it is as material and as well pleaded as any of the others, and more so than the most of the others. It reads as follows: '(4th) Said lots were not sold for taxes at the time and place required by law.' Now if the lots were not sold at the time or place required by law, of course the tax deed founded on such sale must necessarily be void. Of course, it must be admitted that this fact is not very well pleaded, but we think it is sufficiently pleaded to be good on general demurrer. If the defendant was not satisfied with this statement of facts he might have required a more specific and definite statement thereof by a motion to have the petition in this respect made more definite and certain. Of course, the defendant had a right to know, from a specific allegation in the petition, whether the plaintiff claimed that the treasurer did not sell said property at the county-seat, or whether he claimed that the place where the treasurer did sell the property was not the county-seat (a mere county-seat question), or whether he claimed that the treasurer did not sell at his office, or at the place where he advertised to sell, etc. The defendant also had a

right to know from a specific allegation in the petition whether plaintiff claimed that the treasurer sold said property prior to the first Tuesday of May, or after the adjournment of the tax sale, at the time to be held, or at some other time not designated by law. In fact, the petition should have stated specifically (if insisted on in the proper way by the defendant) the time when, and the place where, said property was sold (and not merely the time when and the place where it was not sold), and all the facts connected with the sale, so that a precise and specific issue could have been made up by the pleadings. Such is the better mode of pleading; and such is the mode that must prevail when properly insisted on by the adverse party. When true and specific issues are made up by the pleadings, the parties may know in advance, and before a trial, just what they will have to prove and what they will have to disprove. But a party, in order to have the facts stated specifically, must raise the question in a proper way. He must do it by motion, and not by a general demurrer. If a petition states a cause of action at all, the petition must be held good when demurred to on the ground 'that it does not state facts sufficient to constitute a cause of action,' however general its statement of the facts may be." (*Park v. Tinkham,* 9 Kan. 615, 618.)

Charges of fraud in pleadings in civil actions are excepted from this rule. (*Ladd v. Nystol,* 63 Kan. 23, 64 Pac. 985.) Perhaps there are some other exceptions. But a general charge in the statement of the contestor of a county election of error and mistake by the boards of judges in designated precincts in counting the ballots and by the board of canvassers in declaring the result is sufficient as against an attack by demurrer, and is not void for indefiniteness.

"More particularity in pleading is not required than the nature of the subject is reasonably susceptible of; and it is obvious, in the very nature of things, that in most instances the candidate defeated by a miscount cannot know whose ballots were miscounted. All he can be expected to know is that about so many ballots were deposited for him at a given poll, and that the count does not agree therewith. If he knows more, it is accidental. Nor, in such case, is it of consequence

whose ballot was miscounted, for the effect is the same, and the mode of proof is precisely the same, whether it was cast by one legal voter or another. It is, moreover, evident that the information upon which the contestant acts must, to a very great extent, be hearsay. He cannot be expected to have been personally at each poll, much less to have known how each elector voted. Nor can he be expected to have personally supervised the counting at each poll, and therefore, however grossly and palpably he may have been wronged at several polls, all that he can say truthfully in respect to most of it is that he is informed and verily believes." (*Kreitz v. Behrensmeyer*, 125 Ill. 141, 172, 17 N. E. 232, 8 Am. St. Rep. 349.)

The district court justified its adoption of the strict rule of pleading by the fact that under the law of this state each political party and each candidate may be represented at every polling-place in the county, and thus may be informed of the facts relating to errors and mistakes, if any occur. Each elector may not be so represented. Any elector may institute a contest. The rules of pleading must, with due regard to the interest of the public and of candidates, expedite his purpose, and there cannot be one set of rules for candidates and parties and another for plain electors.

At the trial before the contest court the contestor offered an amendment to his statement, which was rejected. It aided the statement but little, and the court did not abuse its discretion in refusing to allow it to be filed.

The judgment of the district court is reversed and the cause is remanded.